3. There are three primary points to be made in support of this appeal. The first is an issue of law of the case and application of the law of the case doctrine. The prior Ninth has held that Mr. Al-Safin entered into an arbitration agreement knowingly and voluntarily and that that agreement is not as a whole invalid under federal law. The second point for this appeal is that the Ninth Circuit's recent en banc decision in Luce Forward recognizes in accord with Gilmer that employers may require arbitration agreements as a condition of employment even where statutory claims such as those brought under Title VII by Mr. Al-Safin are implicated. That's not an issue in this case, is it? Well, initially the district court had ruled that Duffield barred enforcement of the DRA. That obviously has been obviated since the Luce Forward decision. That was reversed on the first appeal, right? It was on the first appeal. It was re-argued on the second appeal because review had been granted and the case was pending en banc at that point. With regard, Duffield is not an issue in this case anymore. Luce Forward addressed that issue. The third point to be made on this appeal is that there should be no invocation of any Armendariz-type minimum requirements for arbitration, which is precisely what the district court did. Armendariz is based on California law, not Washington law, which controls here, Washington contract law of general application. Arbitration-specific pronouncements like those contained in Armendariz are preempted by the FAA, as has been held by the United States Supreme Court in Perry v. Thomas and Doctors Associates v. Castorado. But what do you think we meant in our little, in our prior mem dispo in the last paragraph where we said, however, arbitration contracts, like other contracts, must meet the requirements of generally applicable State law? Because the district court did not have the opportunity to pass on the validity of the contract under State law. We remand for its consideration of these questions in the first instance. Here is what the district court did. Is that what the district court then did? No. What the expressed instruction, as I read from the prior Ninth Circuit opinion, says finally, and I'm looking at the supplemental excerpt of record, page 43. Finally, although we express no opinion as to the enforceability of particular provisions, we are unable to agree with the suggestion that illegal provisions so infected the contract as to render it invalid as a matter of Federal law. Taking that statement in context, it's an instruction from the prior panel that says, district court, you need to look at this under Washington law. There may be some particular provision or provisions that you find unenforceable based on Washington law, because you didn't look at Washington law last time. You relied on Duffield. So, district court, go back and look. Compare this agreement to Washington law. However, it is our view that even if one or more provisions might not be enforceable, there is not illegality that pervades this contract so as to render it unenforceable. That is important because the arbitration agreement expressly states a severability clause within the agreement. When the agreement originally was entered by the parties, the parties agreed that if there was some portion or portions of the agreement that could not be enforced, the core obligation to arbitrate still would need to be enforced. That's what the district court didn't do. The district court went back to square one and went back to an analysis of, well, it looks like to me they forced him to agree to this. That shouldn't have been in the case anymore. The district court then went back and looked not at the appropriate rules, not at the 2003 rules, which it was. Scalia. Pardon me, counsel. If we accept your idea that this was a mandate to look at specific provisions which might be unenforceable under Washington law, right? Yes. And if one of those severable provisions is that all employee claims against a contractor must be arbitrated but that employer claims against an employee do not have to be arbitrated, and if we say that severable one is unenforceable based on substantive unconscionability, the result is there's no arbitration. Isn't that correct? If the record reflected that, the Court might be able to reach that conclusion. That's not what the record reflects here. What the record reflects is that the arbitration agreement, regardless of the record reflecting it, if the Court finds substantive unconscionability and there is evidence from which we can say they found it maybe on the wrong basis, but it's there, aren't we required to affirm on that basis? No. What the Court could have done and what the – using your hypothetical as an example because it is hypothetical, what the Court then should have done is say this clause that appears to me to only be a one-way requirement for arbitration, that's severed. I find that unenforceable under Washington law. Therefore, I'm going to sever that. And I will read into this agreement, which is what a severability clause permits the Court to do, a mutual obligation to arbitrate. I would like to point out, though – I would go back to the Bradley v. Harris decision that Judge Tashima authored where he talks about mutuality not requiring the parties to have identical obligations under an arbitration agreement. If you look back at the Circuit City case out of the Fourth Circuit and the Circuit City case out of the Seventh Circuit dealing with mutuality of obligation, what those circuit courts held is that there doesn't have to be a mirror image of obligation, that the fact is that both parties are members of the arbitration agreement, both agree to be bound by its provisions. That is sufficient consideration, and because you have consideration, you don't ever have to get into the issue of mutuality. Now, Washington contract law, which this Court must follow, is precisely the same. What Washington contract law says is that we are not going to get into a discussion of mutuality unless we find consideration being absent. There's no argument that's ever been made here that the dispute resolution agreement was not supported by sufficient consideration. It is because the Court does not get into the business of weighing consideration that you don't get into a business of determining whether or not there is a mirror image of mutual obligation. So to use your example, I think what the Court would do is say, I would find that provision under the constraints of the prior Ninth Circuit opinion, okay, the Ninth Circuit is telling me that illegal provisions do not so pervade this agreement as to render it illegal as a matter of Federal law. Under State law, I find certain terms unenforceable. I will strike those from the agreement, and the core obligation to arbitrate must go forward. Where do you find the core obligation when the first paragraph says, employees shall arbitrate, and that's stricken? Where is that promise to arbitrate? From the rest of the provisions when you've just stricken the most important one? No. The promise to arbitrate, in this case, it's our position that the original 1997 agreement clearly was bilateral. It required arbitration among employees, officers, and agents of the corporation. It bound the corporation to arbitrate. Circuit City never has taken the position that it's not required to arbitrate. This is not one of those agreements where the employer carves out some series of provisions. Where is there anything in the 1997 agreement that says employers shall arbitrate claims that the employee has? The original 1997 agreement in the description of the obligation to arbitrate talks about who is covered, and it controls disputes among officers, agents, employees of Circuit City. Therefore, if Circuit City had a dispute, an employment-related legal dispute, with an employee, it would be bound to arbitrate that. And that's the position that Circuit City always has taken as a practical matter. There is no evidence in this record or in any other Circuit City case that Circuit City ever has tried to exert out. But sure there's evidence, because that provision was changed. If that's all it would have been, why was it changed? Because we had to argue about it over and over again, and to get past that argument, we revised it in approximately 1998 to make clear that there was a – to make more clear that there's a mutual obligation to arbitrate. It is our position that the law of the case issue ought to control what the district court did on remand. The district court acted as though that prior decision didn't exist. It went back to square one. Which? Are you talking about the prior circuit decision? The prior Ninth Circuit decision. The district court, the second time around, made no reference, substantive reference, to the Ninth Circuit's prior decision. It went back and revisited issues, with the exception of Duffield, which I think even the district court recognized was a dead letter at that time. Went back and started the process all over again. The district court made a determination that the 2003 arbitration rules couldn't apply. That was a complete mistake. Why was it a mistake? In 1997, when Mr. Al-Safin began work with Circuit City, the agreement that he entered at that time, which the Ninth Circuit said he knowingly and voluntarily entered, at that time said, this agreement can be modified. It can be modified at certain times and in certain ways. And the way it could be modified was at the end of each year, on one specific day, Circuit City could give notice of changes and make those changes available. And an employee could accept it or reject it. The employee could accept those changes, and it would be deemed to be accepting it by continuing employment. And this plaintiff never accepted it, because he was an employee. Absolutely, he accepted. Because the ‑‑ He continued his employment after that? After 1998, into ‑‑ No, no, no. After the ‑‑ after 2003, change was made. Here's the rule he accepted by continuing to be employed into 1998. The rule he accepted is that in the future, if there are arbitrations, the rules we're going to apply are the most current rules at that time. That is what he accepted by continuing to be employed. No, but the most current rules, I mean, depends on acceptance at the end of the year. Absolutely not, Your Honor. What the ‑‑ What does it say? You can do it on December 31st, and then the employee has a month, right? And if the employee doesn't like it, he can resign within a month, right? What it says is ‑‑ And you know what it says? What it says is that by continuing to be employed, once the rules become effective, once the change becomes effective, you are deemed to have accepted it. And he didn't continue to be employed. He did continue to be employed on into ‑‑ Well, he said once the rule becomes effective. And the rule that became effective was the rule that says when you arbitrate, the procedural rules that will apply are those in effect at the time the arbitration request form is received and your filing fee paid. If you read it that way, this whole provision about, well, you have until, you know, 30 days after December 31st to accept it or reject it is meaningless. Absolutely not. Mr. Alsaphine could have quit within that 30 days, exactly as you're saying. Within that 30 days. He could have, if he had quit before 1998 began. But the way you're trying to apply it to him, all these subsequent changes could never be rejected by anybody because they accepted it back in 1999. No one could ever reject any subsequent changes. Because you're saying 1999, every employee agreed to accept every change that's ever made in the future. That's what you're saying. There's nothing novel about that concept. It happens in employment handbooks. After interpretation, then all this gibberish about, well, you have 30 days after December 31st to reject it, is meaningless because you can't ever reject it. That's not true. Your argument would be even someone who quit on January 2nd said, no, he didn't reject it because in 1999 said he'd accept whatever's current. That's the same argument you're making now. It's nonsensical. I respectfully disagree because contracts are functions of. It certainly is not a mutual obligation. One side could change it willy-nilly without any agreement by the other side. That's what you're saying. It is not willy-nilly. What the Sixth Circuit. I say, look, here's our contract, but I can change it any time I want to, and you have to accept it. It's not changed any time you want to. Well, I can change it every December 31st. And the Sixth Circuit in its en banc decision in Morrison said, we recognize that this modification procedure is enforceable because Circuit City gives up the right to change willy-nilly. It reserves the right to change one time a year on certain notice, and that's going to be enforced. I think it's based upon the understanding that the employer has 30 days after that to reject it. And you're saying he doesn't. Absolutely not. I believe if the Court will read carefully the Morrison decision, what the Morrison decision specifically looks at the provision that says arbitrations will be governed by the most current set of procedural rules. It says that's enforceable. That change was accepted. I find the most recent, most current enforceable rules is to see whether 1, on December 31st, was there a change, and 2, was it rejected within 30 days. That's the procedure established. I respectfully disagree with the Court. The procedure established. I said that procedure about, you know, December 31st and 30 days thereafter. The purpose of the 30 days mean? He was given notice of a change. And a change was going to be made that in the future, arbitrations will be governed by the rules in effect at the time they take place. The logical reason for that is if you have three arbitrations happening in 1999 and causes of action arose at a different time, you don't want to be applying different rules to them. What it also permits is that the parties both will have options. We do that in court all the time. The advantage that this provides is this is a dynamic and fast-changing area of the law. Every change that's been made, as we've set out in the record, has benefited Mr. Alsafine by recognizing a change in the law as arbitration has developed. You're saying that after the notice in 1997, December 1997, there was a 30-day period when Mr. Alsafine could have said, I reject the imposition of future rules if I ever seek arbitration. And he could have walked out. And then the 97 rules would have applied to him? Had there been some cause of action that he wanted to bring at that time, absolutely. He had an opportunity to reject this forward rules provision. Yes, he had that opportunity. He did not. He continued employment, and he accepted the benefits of that employment. All right. What I would like to focus the Court on with regard to the 2003 rules is — You only have three minutes left, Your Honor. I understand. And I'm going to try to reserve two minutes of my time. The 2003 rules, no argument, no credible argument has been made that there is anything improper or unfair about the 2003 rules. And that's why I believe the Court should enforce them. Lastly, if the Court is concerned about the issue of Ting v. AT&T, which two members of this panel were on that decision, Ting has no application to this case. Ting concerned an interpretation of California law and the unconscionability of a class action waiver. Washington law never has stated any objection to class action waivers. Secondly, the cases on which Ting relies are currently on review by the California Supreme Court. The last point I would like to make at this time is that right now is before the Washington Supreme Court two cases on review. Zuber v. Airtouch Communications and Adler v. Fred Lind Manor. What's the name? Zuber? Zuber, Z-U-B-E-R. Z-U-B, okay. Go ahead. Versus Airtouch and Adler v. Fred Lind Manor. The Washington Supreme Court took direct review of both of those cases, which are employment arbitration cases, from the trial court and is currently accepting briefing on those cases. Thank you. Okay. Thank you. May it please the Court. Michael Subit for Apolli Muhammad Al-Sufin. In both Adams v. Circuit City and Ingle v. Circuit City, this Court found the exact arbitration agreement before it today unconscionable and unenforceable under California law. The only question is whether the result would be any different under Washington law. Well, just a minute. When you say the exact arbitration, are you talking about the 2003 version? That's not what applies, Your Honor. What applies, it is black-letter law, and as the district court properly recognized, that unconscionability is judged at the time the contract is made. That is black-letter law in Washington. It's black-letter law under the restatement. So the Court deciding whether this agreement was unconstitutional looks at the 1997 rules. Why is that? Even though the contract provides that it's subject to revision? That's not what the 1997 contract provided. But this Court, in terms of the issue, the 1998 contract did provide that it could be in the Circuit City with the arbitrary Let me go back here. It said the arbitration would be conducted by the rules at the time the claim arose. Circuit City changed it in 1998 to say that in 1998 that it would be conducted whatever rules would be in effect at the time of the arbitration. In Engle v. Circuit City, this Court already struck down that provision as unenforceable and unconscionable. That provision itself, as District Judge Peckman also found, that that provision lacked mutuality, was an illusory promise, and it lacked consideration, as was said earlier. All the subsequent modifications after 1998, he had no opportunity to reject. An illusory promise, as I understand, is important when one is analyzing whether there is consideration for a bilateral contract. Correct? That's correct. This isn't a bilateral contract. It's a unilateral contract. I disagree, Your Honor. An arbitration agreement under this Court's precedence has to be a bilateral contract or it's unenforceable. If it's a unilateral contract, it's not an arbitration agreement. Unilateral in the sense that Mr. Al-Safin doesn't promise to work for Circuit City for any period of time. His performance is showing up for work. Circuit City promises to employ him at a net wheel contract with these terms. To me, all the argument about illusory promises is misplaced. What we have here is the question whether a power retained by one contracting power, party, can be imposed to change the contractual relations of the other party. But consideration here in a unilateral contract obtains when the man goes to work. The original agreement was a bilateral contract, Your Honor. Mr. Al-Safin promised. He promised to submit all of his disputes to arbitration. That was an agreement signed January, June 1st, 1997. So it is a bilateral contract. And the question is, at the moment when that contract was made, was it unconscionable? And we have the answer to that in this Engel v. Circuit City case. The Engel v. Circuit City case applies the 98 rules, which were the last rules that were in effect when Mr. Al-Safin was working at Circuit City. The real question in this case, then, is which version of the agreement or the procedural rules applies to your client? I think it only matters somewhat. The 97 and the 98 rules are substantively identical. The 98 rules ---- Kennedy, you've got to go past 98, because I think Circuit City is contained in the 2003 rules. That's right. And they're incorrect for two reasons, three reasons. One, unconscionability is decided at the time the contract is made. In 1997, there was no provision in this contract that said you apply them at later rules. The question of whether the agreement is unconscionable at the time it's made is a wholly separate question from what rules might have applied five years later at the time an arbitration is held. It is black-letter law that this Court looks to the 19 ---- the contract that Mr. Al-Safin signed. We contend that on June 1, 1997, that this contract was void and unenforceable as of that date. There is no arbitration to arbitrate. There is no contract that was ever enforceably signed. That's unconscionability. The very theory of unconscionability is the contract was unconscionable at the time it was made. So, therefore, that's the focus is what it would be. And the district court correctly recognized you look at the contract when it was made. When the contract when it was made is in the 1997 rules, which are identical to the rules that this Court found unconscionable in Engle. It had nine different ---- Under California law. It's the best case under Washington law, because we understand that there's a difference between California law and Washington law, because under California law you have to find it both procedurally and substantively unconscionable, number one. And under Armendariz, the proof of procedural unconscionability may be diminished in weighing the amount of substantive unconscionability which is proven. That is a concept foreign to Washington law. That is correct. All right. Now, what makes this unconscionable? Let's take your 1997. Right. Forget about 2003. Okay. Although, if you have the 2003 rules in 1997 and the 1997 rules in 2003, your position might be different. But that's not the situation. I don't think so, Your Honor. Let me first deal with the issue. I'm wondering what Washington case holds the provisions of the 1997 arbitration agreement to be either procedurally or substantively unconscionable. The first ---- there is no specific Washington case that deals directly with the substantive arbitration provisions issue except save one, which is the Mendez case. The Mendez case does deal with one of the nine reasons that Engle found this particular arbitration rules to be unconstitutional, which was the excessive fees issue. That was only one of the nine issues. Fees. The fees. That the arbitration fees were excessive. This Court rule, again, in terms of the ---- I agree with you. There is the difference between Washington and California law, and it shows that Washington law is more protective on unconscionability than California, not less so, because we don't have to prove both unconscionability procedurally and substantively to prevail. We only have to prove one. In California, it's harder to prove it unconscionable. So Armendariz is simply basic contract law. That's exactly what this Court held in Ting. That's exactly what this Court held in Engle. If it weren't basic contract law, it would be preempted. But this Court has repeatedly ruled that Armendariz is not preempted because it's general contract law. The same general contract law embodied in Armendariz, Adams, Engle, are the same The Mendez case also applies California law in assessing substantive unconscionability under Washington law. The point is, Armendariz is just general unconscionability law. There's no evidence that it's any different. There is nothing in Washington law to suggest the result would be any different,   And by definition, we're dealing with basic unconscionability rules. And one of the rules of unconscionability is you have to examine the contract at the moment it was made, June 1, 1997. You say that Luna and Mendez hold that Washington law incorporates California law, except for the double requirement of California law. I want to be precise. It is consistent with it. This is simply, this is general contract law throughout the country. They both side favorably to California's substantive unconscionability law. Luna and Mendez do. And the idea of being in this particular area, there is no difference. One difference I agree is a difference that, in fact, it's more favorable. It's easier to find something unconscionable under Washington law because we only have to show substantive unconscionability. Kennedy. It's easier to find what's substantively unconscionable under Washington law than it is to find what is substantively unconscionable under California law. No. Do you concede that that's a matter of general contract law interpretation throughout the common law states? The latter, Your Honor. It is a matter of, it is exactly as easy or as difficult to prove something is generally unconscionable substantively under Washington and California as both Judge Peckman did in this case and as Judge Lasnik did in the Luna case. So, again, we're dealing with the 97 rules. The 97 rules are the same as the 98 rules, which this court held unconscionable in Ingle. And the only question is, is the result any different under general principles under Washington? If it is unconscionable under substantive unconscionability law in California and Washington law is the same on unconscionability, then clearly it's equally unconscionable. And, again, this whole rule, this Rule 19 that Circuit City relies on to try to that was unenforceable and unconscionable. That's why even though it arose under the 98 rules, they refused to apply the later rules. Circuit City made the same argument in Ingle, and they did not apply the rules in effect at the time of the case. The latest that they applied was the 98 rules, which are the same as the 97 rules. The point, Your Honor, is Ingle and Adams control this case in the absence of any indication that Washington law is any different. Mr. Berry today has tried to re-argue Ingle, tried to re-argue Adams, but it's the same agreement. Let me get to one point to dispose of very quickly, which is the supposed restrictive mandate that the first panel, their excerpt of record number 43. I raised an argument the first time. The district court the first time basically relied on Duffield, which at that time was good law. At the time we were up on the first panel, the status of Duffield was uncertain, loose forward had not been decided yet on Bonk. In fact, it had not even been decided yet on the panel. I suggested some other grounds, one that the agreement was not knowing. I never mentioned voluntary. That was never an issue before the court, and that's not even an issue under Ninth Circuit law. I suggested that possibly under Federal law it might be invalid under the narrow exception of Graham oil. The prior panel didn't like those arguments. It said under the – it did not fall into the narrow Graham oil exception to render the whole agreement invalid. Then what it says is other contracts must meet the requirements of generally applicable state law. It then cites Circuit City v. Adam on the case on Wienand from the U.S. Supreme Court where this court found the whole thing unenforceable. It didn't sever out provisions. The next thing what the court said is because the district court did not have the opportunity to pass on the validity of these contracts under state law. If Mr. Berry were correct, it would have said if it didn't have the opportunity to decide whether to sever out certain provisions. It's a very creative interpretation, but that's not what it said. This – the prior panel said Federal issues don't get you there. We're going to leave it open under Wienand on the state issues. If you find it unconscionable under state law, you have the discretion to strike down the whole thing rather than to sever a single provision. That's what was done here. That's what was done in Adams. That was what was done in Ingle. That was what was – that's been repeatedly done because these agreements that Circuit City continually forces on its employees, as this court has recognized, are pervasively unconstitutional. What it did, only despite what – Unconstitutional. I'm sorry. Unconscionable. Excuse me. Not quite the same thing. Only employees must arbitrate their employment claims. The employer must not. Shorten statute of limitations. Limitations on punitives. Back pay limitations. Front pay limitations. Confidential arbitration. Each party must pay one-half the cost, which, again, was the provision that Mendez struck down. It was the only one at issue in that case because that agreement wasn't as unconscionable as Circuit City's. They found it unconscionable in Mendez based on only one of the nine deadly sins. Circuit City has all of them. Limitations on class actions. No waiver of filing fees. And the unilateral power to terminate the agreement and to modify the rules. That's – that's what Circuit City views as its source of power to sort of keep changing the rules. I'm aware of no other situation where one of the parties to a transaction gets to decide unilaterally what rules are going to be imposed for that – for the arbitration down the road. My – my client has no input. And that will employment every day? Not for – When it shows up and the boss says, I don't like the way you part your hair, you're out? That's employment. That's not an adjudication. An adjudication in an arbitration is meant to be a substitute for the judicial process. Arbitration, this Court and the Supreme Court have made very clear, you can make – you can substitute an arbitrator's for the jury. What you can't do is to stack the arbitration agreement in favor of the employer. That's what Circuit City did. That's why this Court has repeatedly struck down Circuit City's attempt. But again, what applies here is the 1997 rules because as a matter of black letter, Washington unconscionability law. And I cited the Jeffrey case, but also the restatement says it and the Washington statute, RCW – or the RCW all say the court judges unconscionability at the moment the contract is made. June 1st, 1997. That is the rules that would have to be interpreted. Those are the rules that are unconscionable. The very same rules as unconscionable in Ingle. Again, I've talked over it. There is no difference at all in this area between Washington and California. Let me get to the – some of the things that Circuit City has argued are differences and they're not. They first rely on the Chajart case to talk about differences between Washington and California law on substantive unconscionability. The case doesn't mention substantive unconscionability. That was never raised by the plaintiff. As Judge Peckman also found, that's a very different case. That's a case like Ahmed and Najd, I believe a panel you were on, where the employer there – the employee there was working at the time the agreement. So that's – Chajart is like Ahmed and Najd. It was upheld. The very same panel that upheld Ahmed struck down the agreement in Adams because, again, it was a mandatory condition of employment. So Chajart has nothing to do with this case. The more recent case of Walters also has nothing to do with this case. This agreement is no good under the Walters case. What the Walters case says is if you have a situation like this where the arbitration agreement and the 97 arbitration agreement says only the employee must arbitrate employment claims. It says nothing about the employer arbitrating employment claims. Walters says that is unconscionable under Washington law. What Walters says is not unconscionable under Washington law is a different situation, is both sides have to arbitrate employment cases. Neither side has to arbitrate intellectual property cases. What they said there was both sides are equally bound to arbitrate a particular type of claim that is not unconscionable. Whether that is – that's a different issue entirely, not one raised by this case. What they did say is had the agreement said that only the employee had to do employment claims, it would be unconscionable. That's what this one says. That's what Armendariz said. That's what Ingle says. It's all the same. Opposing counsel talked very briefly about the Morrison case. First of all, this is the Ninth Circuit. Ohio required both substantive and procedural unconscionability. They ruled it was not procedurally unconscionable, but they said in dicta that it probably would be substantively unconscionable, even under Ohio law. Again, under Washington law, I win. All I need to prove is substantive unconscionability. We know it's substantively unconscionable under Ingle and Adams. Again, the Circuit City doesn't deny the district court had lacked discretion to knock down the whole arbitration agreement. Kennedy, would you object to our certifying the question of whether it's substantively and procedurally or procedurally unconscionable to the Washington Supreme Court for the decision of what is the law of Washington? Your Honor, I think the district court was correct that the law is sufficiently clear. Circuit City has emphatically rejected that as an alternative. I don't think that's necessary. And let me then get to the cases that are mentioned, Zuber and Adler, which are cases I'm familiar with. There are a number of issues present in that, that it deals with a great number of them. Unconscionability is only one of them. It deals with the right to trial by jury. The Circuit City has filed a brief arguing that all this court's decisions and armadarans are all preempted under the FAA. There's a wide variety of issues. There is no guarantee at all that those Supreme Court decisions are going to deal with the single issue before us, which is really essentially whether Washington Supreme Court decides on whether it's the right to trial or the right to trial.    Kennedy of course is saying is it's a matter of which one. Shouldn't we certify this case to this Washington Supreme Court? I'm sorry. I think I thought I had answered it. I don't think that's necessary, because as the district court judge in this case found, Washington law is sufficiently clear because it is a law of general application. We're dealing with black letter law here. And again, Armendariz has been followed. It's nothing more than general applicability. So I don't think you have to, Your Honor. Judge Peckman is not only a local judge familiar with it. She's a former state court judge. She determined that Washington law was sufficiently clear. I think if you disagree with me, Your Honor, and obviously find that it's insufficiently clear, then of course the court should certify. But the court should certify only where it's unclear. And I think it is clear here. Again, Your Honor, and by the way, on the 2003, if they apply, and I don't believe they do, it's still unconscionable. And how do we know? Because there's still the one-year statute of limitation, the $75 fee, no class actions, unilateral power to modify, and secrecy. These were all things that in the Ting case and a more recent case, Mantra v. Circuit City, which is 335F3-1101, were all still unconscionable. So again, our position is black letter law. The 97 rules apply. It's all unconscionable. But again, absent a determination by this court or anything indicating Washington would not follow the general principles in Armendariz, Ingle and Adams Patrol, the same result applies here. All right. Thank you. Your Honor. I have three points to make, Your Honor. If, in fact, we're going to look at the agreement at the time it was made, then let's do it. Let's look at the agreement in 1997 and give full effect to what it says. In the supplemental excerpt of record, page 124, rule 19 of the 1997 agreement says, Circuit City may alter or terminate the agreement and these rules, on December 31st of any year upon giving 30 calendar days written notice to shall be subject to the agreement and corresponding rules and procedures in effect the time the claim arose. That was the deal in 1997. So if we're going to look at the ---- But it asserted that that rule 19 has been held to be unconscionable. Right? Do you agree with that? I do. No. I do not agree that that has been held unconscionable. In the Adams case, in spite of the panel's lip service in Adams that was going to apply the 1998 rules, it obviously didn't because the 1998 rules, had they been applied, would have said it's the rules in effect at the time the arbitration is demanded and the filing fee paid. So what the Adams panel did not say, we're not going to enforce that provision. It simply said the 1998 rules apply and then made no mention of rule 19, in spite of our argument. So that was a flaw on that case. So if we're going to construe the agreement at the time it was made, at the time it was made it provided for modification. It was modified in accordance with its terms, and the record does not reflect any conflict on that issue. And the fact that Mr. Alsopheen continued to be employed into 1998, he agreed to the new provision set forth at page 135 of the record that says it's going to be the rules in effect at that time. I have one final point to make, if I may. I see my time has expired. Go ahead. This issue of procedural and substantive unconscionability, it's a Gordian knot that we don't have to get into necessarily in Washington in terms of the difference between Washington law and California law. I will tell you that there is no Washington commercial contract case that says either procedural or substantive unconscionability is enough. That only has arisen in the context of an arbitration case. So there's no – I went back into the 60s, 50s, 40s, 30s, no Washington commercial contract case that says that. What these cases do say, and Chart picks this up, is it's a context rule. You look at the context in which the agreement was made to determine unconscionability. So I think that isn't the appropriate analysis here. And if the Court feels that it is appropriate to certify this case to the Washington Supreme Court for consideration along with these Zuber and Adler cases that are currently before it, we have no objection to that. What we don't think the Court can do is adopt the district court's position of ignoring the prior panel's decision and treating it as though it did not exist. Thank you. Thank you. We thank both counsels. This case is submitted for decision. Last case on today's bill, and we stand in recess for the day. See you sometime.
judges: Tashima, Paez, Bea